## Hardy's Adoption

*Joseph B. Wissler*, for petitioner.
*Harvey B. Lutz* and *Sumner V. Hosterman*, contra.

APPEL, P. J., May 18, 1936.—On April 9, 1936, Henry H. Geyer and Dora Geyer, his wife, presented a petition for the adoption of one Dora Lillian Hardy and asked that, if adopted, she may bear the name of Dora Lillian Geyer. The petition states that she is the daughter of Leicester Hardy and Cynthia Maria Hardy, now Deetz, 11 years of age, and that for about ten years she has been living with and maintained by petitioners. The father joined in the petition, and at the hearing gave his full consent to the proposed adoption, and agreed that she should bear the name of Dora Lillian Geyer. The mother, now the wife of Robert Deetz, appeared at the hearing and resisted the application for adoption. The petition averred an abandonment by the child's parents for a period of about ten years. This was denied by the mother. As the father consented to the proposed adoption, we need consider the matter only as it relates to the attitude and conduct of the mother.

From the testimony taken at the hearing, we find the following facts, together with our conclusions of law:

The marital career of the parents of the child, Dora, has not been a very creditable one. In the case of the mother it has been sordid and disgraceful. They had three sons and a daughter, the subject of this proceeding. The collapse of the family occurred nine or ten years ago and was due entirely to the misconduct of the wife and mother. The records of the Lancaster County Court show that on May 21, 1927, on the application of the husband, a decree of divorce was entered against his wife, Cynthia Hardy, on the ground of adultery, at February term, 1927. The corespondent was one Roy Palmer, and the action was uncontested. Shortly after the divorce, in the same year, she married Palmer at Elkton, Maryland, and for four years lived with him as his wife. She then discovered that he had a wife and children living in Florida. About four years ago, without any legal proceedings to annul the so-called marriage with Palmer, she married her present husband, Robert Deetz, with

whom she is now living with her sons. The court records further show that on July 19, 1927, at her instance, a writ of habeas corpus was issued, in which proceeding she endeavored to obtain possession of her daughter Dora. A hearing was had, and on July 30, 1927, the following order of court was entered:

"And now, July 30, 1927, it being deemed for the best interests of Dora Lillian Hardy that she remain with Dora Geyer [one of petitioners], with whom she has been placed by her father, the writ of habeas corpus is hereby dismissed." (Habeas Corpus Docket no. 2, page 476).

It may be further stated that on April 21, 1936, another petition was presented to the court of common pleas for a writ of habeas corpus on behalf of Cynthia Deetz, in which she again sought to obtain possession of her daughter. The application was disallowed by the court and the petition withdrawn.

We further find that after the decree of divorce in 1927 the mother took all the children, Dora being then 13 months old, to York, Pennsylvania, where she apparently abandoned them. The father went to York and brought them all back to Lancaster. Having no proper home, he placed the boys in the children's home at Lancaster. The little girl he placed with the Geyers, the petitioners, in whose home she has been maintained to the present time. Having no children of their own, we find as a fact that the Geyers reared Dora as a child of their own, sending her to day and Sunday school, showing a proper regard for her material and spiritual welfare. Such was their parental care that friends and neighbors considered the child to be their own, and Dora knew them as her only parents. She was placed on the witness stand, and her testimony contains the following statements:

"Q. Do you know this lady here (indicating Cynthia Deetz)?

"A. No, sir.

"Q. Is that the lady over there that you have as your mother (indicating Mrs. Geyer)?

"A. Yes, sir."

We find, as a fact amply sustained by the evidence, that for practically 10 years both parents failed to contribute anything to the support of Dora, and that during all those years she was maintained and reared by petitioners. Actually and in a legal sense contemplated by the law the child was abandoned by her natural parents. Such abandonment was persisted in and continuous for about ten years. Having failed in her obligations as a parent for this period of time, the mother cannot now be permitted to assert her maternal right to her child. Counsel have argued that the mother never abandoned her parental interest in her child, and, therefore, there was no legal abandonment. In the face of the facts of desertion, nonsupport, and abandonment, any such psychological sentimentality must be without avail. As stated in the opinion in the case of Winans v. Luppie, 47 N. J. Eq. 302, quoted in Denny's Adoption, 11 D. & C. 611, 615:

" 'The statutory notion of abandonment does not necessarily, we think, imply that the parent had deserted the child or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. Such a purpose, clearly manifested, certainly forms a more reasonable ground for permitting judicial discretion to decide whether another may assume these claims and duties than the signature of the parent, which a mere impulse may induce. It does not follow that the purpose may not be repented of, and in proper cases all parental rights again acquired, including this statutory right of preventing adoption by withholding consent; but, when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated or can be consistently with the welfare of the child. When, in pursuance, perhaps, of the abandonment, new ties have been formed and a new

station in life has been taken by the child, it might be unjust that, solely because of the parent's caprice, legal sanction should be refused to the new conditions. Under such circumstances, a court might lawfully deem the abandonment irrevocable, so far as the claims of the parents were concerned.' "

It should be said, however, in justice to the mother, that she has in a measure redeemed herself in the last four years. From the time she married her present husband she seems to have deported herself in a becoming manner. She has taken her three boys from the children's home to her present home, and from their appearance they are evidently well cared for. Her husband is a reputable man and has provided a comfortable home. On the other hand, we find that Mr. and Mrs. Geyer are eminently respectable, decent people living in the Borough of Lititz. They have a comfortable and suitable home; they have poured all the love and devotion of parents on the child they now seek to make their own. The child, knowing no other parents, has returned this love and affection. The result is a happy home. From the testimony of the minister of the church with which the family is affiliated and of their neighbors, we are persuaded this little girl will grow in character and knowledge of true womanhood. It certainly cannot be for the best interest and permanent welfare of the child that this happy relationship should now be disrupted. Whatever rights the natural parents have had, they were forfeited when they failed to perform their parental obligations. After 10 years of abandonment, embracing as it does a serious moral delinquency, the mother's rights have been forever lost. No rehabilitation in character or conduct can now recover these rights.

There can be no dispute as to the law applicable to the instant case. The proceeding is based on the Act of April 4, 1925, P. L. 127. In accordance with the provisions of this act, in order to deny the parents' legal rights we are required to find as a fact an abandonment of the child.

We need not in detail examine the various definitions of the word "abandonment" which are presented by text-book writers and appear in many judicial decisions. We need only say that we do find as a fact there was an actual and legal abandonment of Dora Lillian Hardy by her parents from the time the child was 13 months old to the present time; that this abandonment was continuous and persistent to the extent that when shown her natural mother the child, now at the age of eleven, did not know her.

As stated in the syllabus in Denny's Adoption, supra:

"The statutory requirement of abandonment does not necessarily require a desertion of the child, but is met whenever the parent shows a settled purpose to forego all parental duties and relinquish all parental claims to the child."

We find the further fact that petitioners have the confidence and respect of the people in the community in which they live; that they are financially able to give the child a good and proper home; that they are persons of good character and are entirely capable and willing to give her a good education and the best moral and religious training.

Finally we find, what is the main inquiry and controlling, that it would be for the best interest and permanent welfare of Dora Lillian Hardy that she be adopted by Henry H. Geyer and Dora Geyer, his wife, and that she have all the rights and privileges as their adopted child given her by the act of assembly. We, therefore, enter the following decree:

And now, to wit, May 18, 1936, it appearing to the satisfaction of the court that the averments made in the petition are true; that the welfare of the said Dora Lillian Hardy, the person proposed to be adopted, will be promoted by such adoption; that all the requirements of the Act of April 4, 1925, have been complied with; it is ordered and decreed that the said Dora Lillian Hardy be adopted by the said Henry H. Geyer and Dora Geyer, his

wife, and shall have all the rights of a child and heir of said adopting parents and be subject to the duties of such child. It is further decreed that the said Dora Lillian Hardy shall assume the name of the adopting parents, to be known as Dora Lillian Geyer.

From George Ross Eshleman, Lancaster.